IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Robert Grindstaff,<br><br>    Plaintiff,<br><br>vs.<br><br>Michael J. Astrue,<br>Commissioner of Social Security,<br><br>    Defendant. | Civil Action No. 8:08-3667-TLW-BHH<br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Robert Grindstaff, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding his claim for disability insurance benefits ("DIB") Title II of the Social Security Act.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

The plaintiff was 32 years old as of the disability onset date. (R. at 25). He alleges he became disabled on February 23, 2003, due to a degenerative disc disease of the lumbar spine, depression, borderline intellectual functioning and hypertension. (R. at 57.) He has a seventh grade education and has past relevant work as a color mixer/lab technician. (R. at 71, 76.)

The plaintiff protectively filed an application for DIB on March 7, 2005. (R. at 57-59.) His application was denied in initial and reconsidered determinations. (R. at 28, 29.) After a hearing (R. at 347-78), an Administrative Law Judge (ALJ) issued a decision on

---

[1]A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

February15, 2008, finding that plaintiff was not disabled within the meaning of the Act. (R. 15-27.) As the Appeals Council denied the plaintiff's request for review (R. at 5-8), the ALJ's decision became the Commissioner's final decision for purposes of judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1)  The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.
>
> (2)  The claimant has not engaged in substantial gainful activity since February 23, 2003, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*).
>
> (3)  The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, depression, borderline intellectual functioning and hypertension (20 CFR 404.1520(c)).
>
> (4)  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).
>
> (5)  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry up to ten pounds on a frequent basis and up to 20 pounds on an occasional basis; to stand and/or walk for a total of up to six hours per eight-hour workday; and to sit (with normal breaks) for a total of up to six hours per eight-hour workday; in addition, he is to have the ability to change positions at least every hour; he is to avoid more than occasional stooping; he is restricted to unskilled work; and he is to avoid occupations requiring more than rudimentary reading.
>
> (6)  The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> (7)  The claimant was born on January 17, 1971, and was 32 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR. 404.1563).
>
> (8)  The claimant has limited education and is able to communicate in English (20 CFR. 404.1564).

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (See SSR 82-41and 20 CFR Part 404, Subpart P, Appendix 2).

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR. 404.1560(c), 404.1566).

(11) The claimant has not been under a disability, as defined in the Social Security Act, from February23, 2003, through the date of this decision (20 CFR. 404.1520(g)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful

employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

The plaintiff contends that the ALJ erred in failing to find him disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) his assessment of the plaintiff's residual functional capacity; (2) assessing the opinion of Dr. David Tollision; (3) evaluating the plaintiff's credibility; and (4) failing to consider a rehabilitation counselor's report. The plaintiff also alleges that the Appeals Council erred in failing to consider new and material evidence of disability. The Court will consider each objection in turn.

**I.     Residual Functional Capacity**

The ALJ found that the plaintiff had moderate limitations in his ability to maintain social functioning and concentration, persistence, or pace, and found that his depression and borderline intellectual functioning were severe impairments. (R. at 22.) The plaintiff complains that notwithstanding these findings, the ALJ imposed no mental limitations on the plaintiff's ability to perform work-related functions. (R. at 23.) The plaintiff contends that a failure to prescribe mental limitations in the plaintiff's RFC is necessarily in error because, by definition, a "severe" impairment is one that significantly limits a claimant's ability to perform basic work activities, *see* 20 C.F.R. § 404.1521(a) (2008).

The defendant responds that the ALJ did include restrictions related to the plaintiff's mental limitations insofar as he concluded that the plaintiff should be limited to unskilled work and could not perform jobs requiring more than rudimentary reading (R. at 23). *See* SSR 00-4p, at *3 (stating that unskilled work corresponds with a Specific Vocational Preparation ("SVP") Level of 1 or 2); DOT 207.685-014, 1991 WL 671745 (Photocopying

5

Machine Operator, SVP Level 2); DOT 569.686-046, 1991 WL 683893 (Laminating Machine Offbearer, SVP Level 2). The plaintiff disagrees that the restriction to unskilled work is a mental limitation. The plaintiff contends that the skill level — or specific vocational preparation (SVP) — simply refers to the time needed to learn a job and is not an RFC finding. (Pl. Brief at 18.)

The defendant emphasizes, however, that unskilled work does prescribe a certain threshold mental demand. Namely, the basic mental demands of unskilled work include the ability to understand, carry out, and remember simple instructions, to make judgments that are commensurate with the functions of unskilled work (i.e., simple, work-related instructions), to respond appropriately to supervision, co-workers, and usual work situations, and to deal with changes in a routine work setting. *See* SSR 96-9p, at *9; SSR 85-15, at *4; 20 C.F.R. § 404.1568(a); *see also Hall v. Harris*, 658 F.2d 260, 267 n.2 (4th Cir. 1981) (defining unskilled work). The Court agrees with the defendant that limiting a plaintiff to unskilled work can be considered as properly accounting for any mental limitations. *See Gilstrap v. Astrue*, 2009 WL 3066364, at *9 (D.S.C. September 22, 2009) ("In this case, the ALJ took any possible mental limitations and medicine side-effects into account by limiting Plaintiff to unskilled, simple, routine work."); *Singleton v. Astrue*, 2009 WL 1942191, at *3 (D.S.C. July 02, 2009) (The ALJ "properly accounted for any mental limitations Plaintiff had by limiting him to the minimal demands of unskilled work requiring only "simple 1 to 2 step tasks"). The plaintiff has not cited any authority to the contrary but simply and baldly claims that it cannot.

The plaintiff seems to believe that the ALJ's determination that the plaintiff's mental impairments are "severe" precludes a finding that he has the "capacity to do basic mental unskilled work activities," as a matter of law. (Pl. Reply at 2.) This Court certainly holds open the possibility that this may somehow be true, but the plaintiff has not supported it and the claim is not self-proving. The designation of an impairment as "severe" is no more than "a *de minimis* screening device to dispose of groundless claims." *McCrea v. Commissioner*

6

*of Social Sec.*, 370 F.3d 357, 360 (3rd 2004). In the context of the disability determination, the word "severe" does not hold its common definition. Although the regulatory language speaks in terms of "severity," the plaintiff need only demonstrate something beyond "a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85-28. Accordingly, there seems to be no conflict between the finding of a "severe" mental impairment and the finding of a residual ability to perform unskilled work. The Court would take notice that it sees such findings routinely. The Court simply believes that the plaintiff is mistaken in his belief that unskilled work requires performance of the same basic work skills which must also be impaired in order to find a mental impairment "severe." "Severity" only requires "a minimal effect on an individual's ability to work." *Id*. Unskilled work accommodates a much lower functional floor. To wit, the plaintiff's mental impairment might affect in some minimal way the complexity of instructions he can handle without disrupting his ability to carry out simple instructions, *see* SSR 96-9p, at *9. This would satisfy the severity requirement without disqualifying him from, the demands of unskilled work. The plaintiff has not cited any source recommending a different conclusion.

The plaintiff also argues that the ALJ's residual functional capacity assessment does not reflect any limitations imposed by his moderate difficulty in maintaining social functioning. (Pl. Br. at 24.) The ALJ found "mild to moderate" limitations in social functioning. (R. at 25.) The vocational expert testified that the plaintiff could perform on-bearing/off-bearing/machine operator jobs, numbering 4,000 to 4,500 locally and over a million nationally. (R. at 373.)

The defendant argues that the ALJ, in fact, accounted for this limitation by finding that the jobs he relied on at step five would have little, if any, public contact. (R. at 26.) While the ALJ did not expressly ask the vocational expert about public contact, the Dictionary of Occupational Titles reflects that the occupations cited by the vocational expert and ALJ do not require significant interaction with people. *See, e.g.,* DOT 207.685-014,

1991 WL 671745 (Photocopying Machine Operator job description);12 DOT 569.686-046, 1991 WL 683893 (Laminating Machine Offbearer job description); DOT Appendix B, 1991 WL 688701 (setting forth possible elements of the "People" component of the Specific Vocational Preparation rating). The plaintiff does not deny these characterizations. The defendant argues, therefore, that any error in not including such a limitation is harmless. *See also Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (finding the ALJ's error harmless where the ALJ would have reached the same result notwithstanding an error in his analysis).

As to this point, the plaintiff is incredulous. The plaintiff elsewhere complains that the vocational expert failed to cite any specific jobs which exist in significant numbers that the plaintiff can perform. The plaintiff argues that it is insult to injury to accept the *generic* descriptions of the jobs offered by the ALJ as sufficient evidence of available work but to then rely on the definitions of *specific* jobs in the Dictionary of Occupational Titles, not actually cited, to reject that any of them require contact with the public. On its face, the plaintiff's reaction seems a reasonable one. But, the Court would answer the rejoinder as follows. First, and as the defendant contends, the Court knows of no requirement that the VE or the ALJ cite specific DOT job titles. *See, e.g., Whitehouse v. Sullivan*, 949 F.2d 1005, 1007 (8th Cir. 1991) (holding that a vocational expert was not required to correlate his testimony regarding the number of jobs that the claimant could perform, which was based on broad state job summaries, with more specific DOT job titles). So, there was no error in not citing specific job titles.[2]

---

[2] The Court does not fully follow the plaintiff's contention that a failure to cite to specific job titles somehow renders the incidence testimony of that same work incapable of establishing that work exists in significant numbers, which the plaintiff can perform. The VE testified that the hypothetical individual could perform on-bearing/off-bearing/machine operator jobs, numbering 4,000 to 4,500 locally and over a million nationally. (R. at 373.) If the lack of specific job titles is not in error, then the incidence rate would seem sufficient to establish that these categories are available. The plaintiff has not directed the Court to any controlling authority on the matter, which would change the undersigned's conclusion that no error was committed.

The question remains, though, having not identified specific job titles and having not specifically asked the vocational expert whether the general categories of work would involve public contact, did the ALJ have substantial evidence upon which to conclude that the jobs recommended, in fact, required "little public contact," as he did (R. at 26)? The Court reticently answers that question in the positive. The plaintiff has not actually explained how the jobs cited require more social functioning than he can handle. "There is no evidence [that] the inclusion of . . . [the] limitation in the hypothetical to the VE would have resulted in a different finding by the ALJ regarding the availability of jobs in the national economy." *Jones v. Astrue*, 2008 WL 4379171, at *20 (N.D. W. Va. September 23, 2008). The burden is certainly on the ALJ to show that the plaintiff retains the capacity to perform alternative work and that such jobs exist in the national economy. *Grant*, 699 F.2d at 191. But, the Court has not been made aware of any authority which would prohibit the ALJ from borrowing relevant definitions from the DOT, even where the jobs cited themselves were not taken from the same. Such definitions would at least be probative. In the utter absence of any evidence that the jobs noted by the VE and the ALJ require significant public contact, remand would seem to be a strained result. The Court would have preferred a more specific discussion with the VE concerning the limitation, but there is no reason to believe that the outcome would have been different.

Lastly, in regards to the RFC assessment, the plaintiff contends that the ALJ failed to seek an explanation for why the plaintiff did not seek treatment for his mental impairments, as required by SSR 96-7p. The Court, however, agrees with the defendant that SSR 96-7p is permissive in nature. The ALJ "should consider any explanations *provided by the claimant*." SSR 96-7p, at *7 (emphasis added). The Ruling further states that "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations *that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical*

9

*treatment.*" *Id.* (emphasis added). The plaintiff has not directed the Court to any authority which would make the ALJ's duty to seek an explanation mandatory where the plaintiff himself offers none and the record does not raise the possibility. *Cf. Reese v. Astrue*, 2009 WL 499601, at *7 (S.D. Ind. February 27, 2009) (finding SSR96-7p non-mandatory in the absence of an offered explanation). Even now the plaintiff has not suggested that some explanation actually exists for the absence of treatment. He simply criticizes the ALJ for not asking the question.

**II.      Dr. David Tollison's Opinion and the Plaintiff's Credibility**

The plaintiff next complains that the ALJ improperly afforded the opinion of Dr. C. David Tollison, a non-treating physician, little weight. Dr. Tollison diagnosed an affective disorder (major depressive disorder with anxiety features) and a somatoform disorder (pain disorder associated with psychological factors), and concluded that the plaintiff would have

> particular difficulty maintaining an acceptable level of productivity and completing tasks on time due to what is expected to be a requirement for an unreasonable number and length of rest periods. . . . It is unlikely he could maintain regular attendance over time, perform activities within a schedule, and be punctual within customary tolerances. The combination of his physical and psychological symptoms is expected to impair his concentration. He is expected to have particular difficulty maintaining focus and attention over time. . . . [P]sychological factors appear influential in his perception of pain and suffering. As a result, work pressures, stresses, and demand situations are expected to result in deterioration both in physical and psychological functioning.

(R. at 290-91.)

The ALJ rejected Dr. Tollison's opinion because (1) the objective evidence did not substantiate the degree of underlying back pain presumed by Dr. Tollison and (2) Dr. Tollison opined as to matters beyond his expertise as a psychologist, including medical, vocational, and credibility. (R. at 25.)

The plaintiff complains that the ALJ improperly required objective evidence of pain. The plaintiff is simply mistaken that this was impermissible as a matter of law. It is wholly apparent for the ALJ to consider the presence or absence of objective medical evidence

10

at the second step of the Fourth Circuit's prescribed credibility analysis. *See Craig v. Chater*, 76 F.3d 585, 593 (4th Cir. 1996). "While objective evidence is not mandatory at the second step of the test, this is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most certainly are." *Craig*, 76 F.3d at 595. The ALJ found that the plaintiff was neurologically intact, with normal sensation and reflexes, full strength, good range of motion and normal gait. (R. at 25.) The ALJ noted that a Dr. Larry Korn observed marked inconsistencies in the plaintiff's range of motion testing. *Id*.

Moreover, other psychologists who examined the plaintiff found that his limitations were less severe than Dr. Tollison determined. (R. at 234 (opining that the plaintiff had "mild-to-moderate limitations with respect to memory/concentration"), 318 (opining that the plaintiff "was certainly capable of maintaining his concentration and focus for a two hour period of time")). It was the ALJ's province to weight the conflicting opinions. *See Bentley v. Shalala*, 52 F.3d 784, 785 (8th Cir. 1995) ("It is the ALJ's function to resolve conflicts among the various treating and examining physicians"). Simply because the plaintiff can produce conflicting evidence – including the fact that another agency psychologist made a similar diagnosis to that of Dr. Tollison's – which might have resulted in a contrary interpretation of Dr. Tollison's records, is of no moment. *See Blalock*, 483 F.2d at 775. As recited, the ALJ had substantial evidence to conclude as he did and the Court will not disturb his decision.

The Court confesses that the ALJ's analysis of the plaintiff's credibility and Dr. Tollison's opinion is less specific than might be preferred. It is not erroneous or so thin as to be unreviewable, however. The ALJ acknowledged the authoritative standard for the evaluation of pain in disability determinations and followed it. *See Craig*, 76 F.3d at 593; (R. at 23-25). The plaintiff has put forth compelling evidence that various physicians found that the plaintiff was neither excessive nor exaggerated in his complaints of pain. (R. at

11

107, 317.) While these opinions were not expressly discussed in the ALJ's decision, the ALJ cited other reasons for finding the plaintiffs's complaints of pain less than credible. The ALJ observed that the medical evidence – which showed that the plaintiff had full 5/5 leg strength and a consistently normal gait; an absence of nerve root compression, sensory loss, or reflex loss; and negative straight leg raise tests (apart from the first four months after his February 2003 injury) – did not support the extreme subjective complaints. (R. at 22, 25, 179, 197, 203, 214-215, 217, 302, 304). As stated, the ALJ further noted the marked inconsistencies in range of motion tests administered by Dr. Korn, which led Dr. Korn to conclude that the test results were invalid. (R. at 25, 215.) The plaintiff has put forward conflicting objective evidence. (R. at 139, 146, 323.)

Had the Court reviewed the evidence in the first instance, it seems likely that the plaintiff's complaints would have been fully credited. But, that is not the posture of this case. The ALJ is tasked with the duty of weighing evidence. Not the undersigned. "Substantial" evidence is more than a mere scintilla but something less than a preponderance. See *Laws*, 368 F.2d at 642. The Court cannot candidly conclude that the reasons cited are insufficient for a reasonable mind to conclude as the ALJ did. *Id*.

### III. Opinion of Non-medical Source

The plaintiff next argues that the ALJ erred because he did not specifically discuss the rehabilitation counselor's report. (Pl. Br. at 30-31). The defendant responds that rehabilitation counselors such as Dr. William W. Stewart are not "acceptable medical sources." *See* SSR 06-03p, at *2. Instead, they are considered "non-medical" "other sources," along with teachers, spouses, relatives, and friends. *See id.* The plaintiff rejoins that the ALJ is still required to consider *all* relevant evidence. *Id.* However, it appears that this district has found that an ALJ is "*not* obliged to evaluate [a vocational consultant's opinion] using the factors in 20 C.F.R. § 404.1527(d)(1)-(6)." *McKoy v. Astrue*, 2009 WL 2782457, at *13 n.3 (D.S.C. August 28, 2009) (emphasis in original). Accordingly, there is no error to the extent the ALJ failed to consider Dr. Stewart's opinion. The Court would

12

reiterate that, contrary to the plaintiff's claim, an ALJ is not required to provide a written evaluation of every piece of evidence, but need only "minimally articulate" his reasoning so as to "make a bridge" between the evidence and his conclusions. *Fischer v. Barnhart*, 129 Fed. Appx. 297, 303 (7th Cir. 2005) (citing *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir.2004)); *see also Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) ("ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered") (citations omitted).

### IV.	New Evidence

Lastly, the plaintiff complains that the Appeals Council erred in not properly considering new and material evidence. Specifically, a Dr. John Milas completed a disability questionnaire several months after the ALJ's February 2008 decision. Dr. Milas found that because of his chronic low back pain, Grindstaff could not engage in "anything less than sedentary work," would need to rest away from the work station more than one hour during the working portion of the day, miss more than three days of work per month, and have problems with attention and concentration sufficient to frequently interrupt tasks. (R. at 346.) The plaintiff argues that the Appeals Council issued only a boilerplate denial.

As the parties agree, the Appeals Council is only required to consider additional evidence that is (1) new, (2) material, and (3) relates to the period on or before the date of the ALJ decision. *See* 20 C.F.R. § 404.970(b); *see also Wilkins v. Sec'y, Dept. of Health & Human Servs.*, 953 F.2d 93, 95 (4th Cir. 1991) ("[T]he Appeals Council must consider new and material evidence relating to the period prior to the ALJ decision in determining whether to grant review. . . .").

The Court finds that Dr. Milas' opinion does not relate to the period on or before the date of the ALJ decision. As stated, the questionnaire was completed after the ALJ's decision. (R. at 346.) The questionnaire has essentially no narrative from Dr. Milas. The answers are largely yes/no. *Id*. And, critically, the questions posed appear to only implicate the existing condition of the plaintiff at the time the questionnaire was completed. The

13

document certainly does not reference earlier time periods and Dr. Milas does not make any effort to do so. On its face, the new evidence cannot be said to relate to a period on or before the decision of the ALJ. The Appeals Council committed no error in rejecting it.

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, this Court concludes that the findings of the ALJ are supported by substantial evidence and recommends that the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED.

s/BRUCE H. HENDRICKS
UNITED STATES MAGISTRATE JUDGE

November 19, 2009
Greenville, South Carolina